FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-2(c)**

In re: Invitae Corporation, *et al.*,

                    Reorganized Debtors.

Natera, Inc.,

                    Plaintiff,

v.

Invitae Corporation, *et al.*

                    Defendants.

Case No. 24-11362 (MBK)

Chapter 11

Adv. Pro. No. 25-01015 (MBK)

Hearing Date: May 22, 2025

*All Counsel of Record*

## MEMORANDUM OPINION

This matter comes before the Court by way of a Motion to Dismiss (ECF No. 8) filed by Defendants, Invitae Corporation ("Invitae") and its debtor affiliates (collectively, the "Debtors"), seeking dismissal of the Verified Adversary Complaint filed by Plaintiff, Natera, Inc. ("Natera"). The parties agreed to a modified briefing schedule and the Court has considered fully the parties' submissions. On consent of the parties—and in accordance with D.N.J. LBR 9013-3(d)(2)—the Court decides this matter on the papers, without oral argument. For the reasons set forth below, the Motion to Dismiss is DENIED; however, the Court will *sua sponte* abstain and dismiss the adversary proceeding without prejudice.

## I.    Venue and Jurisdiction

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended September 18, 2012 and June 6, 2025, referring all Bankruptcy cases to the Bankruptcy Court. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (C). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.    Background

A thorough recitation of the facts of this case can be found in the underlying Adversary Complaint (ECF No. 1) and in the parties' pleadings with respect to this motion; accordingly, the Court will not repeat them in detail here.  In brief, the dispute centers on a pre-petition Asset Purchase Agreement ("APA"), which the parties executed on January 17, 2024.  Pursuant to the terms of that APA, Invitae sold to Natera certain assets related to its digital health solutions and health data services.  In exchange, Natera agreed—among other things—to make a cash "Milestone Payment" to Invitae.  The precise amount of the Milestone Payment depended on calculation of a "Volume Retention Percentage," which required data "to be collected and analyzed" after the closing date of the APA. *See Complaint* ¶ 3, ECF No. 1.  The parties disagree as to the contingent nature of the Milestone Payment and as to the date on which Natera's obligation to make the Milestone Payment arose.

Subsequent to execution of the APA, on February 13, 2024, Invitae filed for bankruptcy under chapter 11.  Throughout the bankruptcy, all parties acknowledged the possibility that Invitae would be entitled at some point to receive the Milestone Payment. *See, e.g. Disclosure Statement* at 59, ECF No. 472 in Case No. 24-11362 (referencing "potential cash milestone payments" from Natera); *Amended Disclosure Statement* at 71, ECF No. 614 in Case No. 24-11362 (same).  The

parties also engaged in motion practice regarding Natera's ability to setoff potential amounts due to Invitae under the APA against any amounts Invitae might owe to Natera as the result of a separate patent-related litigation. *Complaint* ¶ 26; *see also Motion for Relief From Stay to Effectuate a Setoff*, ECF No. 670 in Case No. 24-11362.  Natera also sought stay relief to "initiate a declaratory judgment action against Invitae to resolve the contract interpretation dispute regarding the Milestone Payment in the APA." *Complaint* ¶ 27; *see also Motion for Relief from Stay to Initiate Delaware State Law Proceeding*, ECF No. 711 in Case No. 24-11362.  The parties commenced settlement negotiations and, ultimately, language was added to the proposed Confirmation Order to resolve these motions.  This language reserved Natera's rights to seek adjudication before a Delaware state court of any contract interpretation issues with regard to the APA and/or any dispute regarding Natera's potential obligation to make the Milestone Payment. *Complaint* ¶ 31.

During this time, Debtors twice amended the plan and circulated supplemental plan documents that explicitly reserved their rights to pursue causes of action with respect to contract disputes, even if the relevant underlying executory contract was rejected by the Debtors. *See Notice of Filing Second Amended Plan Supplement for the Third Amended Joint Plan* at 10, ECF No. 910 in Case No. 24-11362; *Notice of Filing of Third Amended Joint Plan* at 36 (Article IV.G), ECF No. 909 in Case No. 24-11362 (stating that the Debtors shall "reserve and shall retain such Causes of Action notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan").  Natera did not object to any version of the plan or the plan supplement provisions.

This Court confirmed Debtors' Third Amended Plan (the "Plan") on August 2, 2024. *Findings of Fact, Conclusions of Law, and Order Confirming the Third Amended Joint Plan*, ECF

No. 913 in Case No. 24-11362.  As a result of the Plan and supplemental documents, the APA was deemed rejected, effective the date of confirmation—although it was formally identified as a rejected contract on August 7, 2024. *See Final Plan Supplement – Schedule C, Contract Rejection Schedule* at 91, ECF No. 924 in Case No. 24-11362.  The Plan also became effective on August 7, 2025, and was substantially consummated on that same date. *Complaint* ¶34; *see also Confirmation Order* at ¶ 128, ECF No. 913 in Case No. 24-11362.

Months later, on December 11, 2024, the Plan Administrator commenced an action in the Delaware Court of Chancery (the "Delaware Action") seeking a declaratory judgment interpreting the APA as it relates to the Milestone Payment.  In response, Natera initiated the instant action and seeks a declaration that the Debtors' rejection of the APA in the Plan relieved Natera of any obligation under the APA, including the Milestone Payment, as well as injunctive relief barring the Delaware Action.  In sum, Natera maintains that "as a non-breaching party of a rejected contract, Natera is no longer required to perform under the APA, and contract interpretation disputes under the APA should be deemed moot as of the Rejection Date." *Complaint* ¶ 41.  In its motion to dismiss, Debtors argue, in brief, that—even though the APA was rejected pursuant to the Plan—the Debtors reserved their right to pursue claims against Natera under applicable law and the express language of the Plan.

### III.  Standard of Review

Debtors seek dismissal of Natera's Complaint under FED. R. CIV. P. 12(b)(6), made applicable to adversary proceedings through FED. R. BANKR. P. 7012. "To survive a motion to dismiss, a complaint must contain sufficient factual allegations, taken as true, to 'state a claim to relief that is plausible on its face.' " *Fleisher v. Standard Ins.*, 679 F.3d 116, 120 (3d Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)).

When reviewing a motion under Rule 12(b)(6), a court must "view the facts alleged in the pleadings and the inferences to be drawn from those facts in the light most favorable to the plaintiff, and judgment should not [be] granted unless the moving party has established that there is no material issue of fact to resolve, and that it is entitled to judgment in its favor as a matter of law." *Leamer v. Fauver*, 288 F.3d 532, 535 (3d Cir. 2002) (citation omitted); *see also Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 14 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly* at 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929).

Further, where—as here—a complaint seeks declaratory relief, courts are guided by the Declaratory Judgment Act. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126, 127 S. Ct. 764, 770, 166 L. Ed. 2d 604 (2007). The Third Circuit has explained that "[d]eclaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct[,]" *Andela v. Admin. Off. of U.S. Cts.*, 569 F. App'x 80, 83 (3d Cir. 2014); and the Declaratory Judgment Act "requires that a 'case of actual controversy' exist between the parties before a federal court may exercise jurisdiction." *Bausch Health Ireland Ltd. v. Mylan Lab'ys Ltd.*, 2022 WL 683084, at *11 (D.N.J. Mar. 8, 2022) (citing 28 U.S.C. § 2201(a)). Thus, when addressing a motion to dismiss a request for a declaratory judgment, a court must assure itself of subject matter jurisdiction by evaluating whether the "facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127.[1] To the extent subject matter jurisdiction exists, courts then have significant

---

[1] Although Debtors do not raise subject matter jurisdiction as a basis for dismissal, "[f]ederal courts are courts of limited jurisdiction and have an independent obligation to address issues of subject-matter jurisdiction *sua sponte*

discretion to exercise—or decline to exercise—that jurisdiction. *See Reifer v. Westport Ins. Corp.*, 751 F.3d 129 (3d Cir. 2014).

## IV.    Analysis

### A.  Motion to Dismiss

It is undeniable—given the undisputed facts of this case and the plain language of the Bankruptcy Code—that Debtors' rejection of the APA in the Plan constitutes a breach. *See* 11 U.S.C. § 365(g)(1).  The outcome of the parties' ultimate dispute, thus, turns on the extent of the parties' obligations under the APA *notwithstanding* that breach.  For purposes of this Motion, however, this Court need only determine whether Natera has alleged facts establishing that a substantial controversy exists sufficient to survive dismissal.

In support of dismissal, Debtors explain that the parties merely deferred *calculation* of the Milestone Payment and contend that Natera's *duty to pay* was triggered—not on the date of breach—but on the date the parties closed on the APA: January 17, 2024.  Debtors cite to the language of the Plan and to applicable law in support of this argument.  In opposition to dismissal, Natera asserts that Debtors have not established that "the Milestone Payment was a vested right to payment upon executing the APA[,]" *id.* at ¶ 7, and Natera maintains that its Complaint alleges facts establishing a controversy regarding the Delaware Action sufficient to warrant relief under the Declaratory Judgment Act, *see id.* at ¶ 20.

The Court agrees with Natera: a controversy unquestionably exists concerning the effect of rejection of the APA on Natera's obligation to make the Milestone Payment.  And, at this stage

---

and may do so at any stage of the litigation." *Crisdon v. Northgate I Apartments*, 2025 WL 906853, at *2 (D.N.J. Mar. 25, 2025) (citing *Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010); *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015)).

of the litigation, the Court cannot—as Debtors ask—make a merits determination as to when Natera's obligation to make the Milestone Payment under the APA arose. Thus, dismissal is inappropriate under Rule 12(b)(6) and Debtors' Motion must be denied. Moreover, because Natera has alleged facts sufficient to establish the existence of a controversy, this Court has subject matter jurisdiction and relief under the Declaratory Judgment Act may be warranted. As a result, this Court will not *sua sponte* dismiss for lack of jurisdiction under Rule 12(b)(1). The Court's inquiry does not end here, however.

### B. Discretion under Declaratory Judgment Act

As previously discussed, pursuant to the Declaratory Judgment Act ("DJA"), courts "*may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). *See, e.g. Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 281 (3d Cir. 2017); *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 134 (3d Cir. 2014). While federal courts ordinarily "have a strict duty to exercise the jurisdiction that is conferred upon them by Congress[,]" *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716, 116 S. Ct. 1712, 135 L.Ed.2d 1 (1996), in declaratory judgment actions, courts have "unique and substantial discretion" to decide whether to exercise jurisdiction. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286–87, 115 S. Ct. 2137, 132 L.Ed.2d 214 (1995); *see also Reifer*, 751 F.3d at 139. Accordingly, a federal court "may abstain from hearing a declaratory judgment action that is properly within the court's subject matter jurisdiction." *DiAnoia's Eatery, LLC v. Motorists Mut. Ins. Co.,* 10 F.4th 192, 196 (3d Cir. 2021). In this case, although the instant declaratory judgment action and request for related-injunctive relief is properly within this Court's subject matter jurisdiction, the Court will nonetheless exercise its discretion and abstain.

The Court's research reveals that challenges to a court's discretion to entertain a declaratory judgment action most commonly arise in the insurance context. While the issue in the present case hinges contract interpretation—and not insurance—the Third Circuit case law remains instructive. In *Kelly* and *Reifer*, the Third Circuit provides thorough discussions on lower courts' decisions to entertain, or dismiss, a declaratory action. *See Kelly*, 868 F.3d 274; *Reifer*, 751 F.3d 129. The opinion in *Reifer* sets forth a non-exhaustive list of factors, *see Reifer*, 751 F.3d at 146, and the opinion in *Kelly* directs courts to first consider whether a parallel state proceeding exists, *Kelly*, 868 F.3d at 282. While the existence—or non-existence—of a parallel state proceeding is not dispositive, it is a "significant factor." *Kelly*, 868 F.3d at 282.

Here, a parallel state proceeding exists in the form of the Delaware Action. This Court disagrees with Natera's assertion that the Delaware Action is rendered "wholly unnecessary" as a result of the Debtors' rejection of the APA. As explained, Debtors' rejection unquestionably constitutes a breach. However, questions persist as to the parties' remaining obligations under the APA in light of such breach. As Natera concedes, "[i]f there were claims and causes of action against Natera for its conduct under the APA *prior to* February 12, 2024[2], those claims and causes of action might remain, as it is undisputed that the contract was not rescinded by the Debtors' breach." *Natera's Obj.* ¶ 3, ECF No. 12; *see also Natera's Sur-Reply* ¶¶ 7, 8, ECF No. 16. By way of the Delaware Action, the parties can litigate this issue, and determine their respective rights and obligations under the APA, including the Milestone Payment, notwithstanding the breach caused by rejection of the APA under the Plan. Thus, this Court elects to abstain from further consideration of this pending adversary proceeding in favor of the Delaware Action.

---

[2] Pursuant to the Bankruptcy Code, the rejection of a contract constitutes a breach on the date immediately before the date of filing of the petition, which—in this case—is February 12, 2024. 11 U.S.C. § 365(g)(1).

In reaching this decision, the Court also considers the position taken by the parties throughout the bankruptcy.  Each version of the Plan and the plan supplements circulated to the parties, including Natera, contained language preserving the parties' rights, and specifically contemplated that any disputes would be resolved in state court.  Natera even sought relief from the automatic stay so that it could file an action before the Court of Chancery of the State of Delaware and seek a declaratory judgment against Invitae to resolve a contractual interpretation dispute. *See Motion for Relief from Stay to Initiate Delaware State Law Proceeding*, ECF No. 711 in Case No. 24-11362; *see also Complaint* ¶ 27 (explaining that Natera moved to "initiate a declaratory judgment action against Invitae to resolve the contract interpretation dispute regarding the Milestone Payment in the APA").  Thus, it seems entirely contrary to past behavior that Natera now takes the position that rejection of the APA relieves it of *any* obligations under the APA and forecloses the possibility of contract dispute resolution in Delaware state court.  Indeed, the Court concludes that there is an equitable basis which precludes Natera from doing so.  The Court refers the parties to the doctrine of quasi-estoppel.

Initially, it would seem that the doctrines of judicial or equitable estoppel address the Court's concerns and preclude Natera's contradictory positions.  However, judicial estoppel— which "prevent[s] a litigant from asserting a position inconsistent with one that [he] has previously asserted in the same or in a previous proceeding[,]" *Scott v. Children's Hosp. of Philadelphia*, 2024 WL 3874380, at *2 (3d Cir. Aug. 20, 2024) (quoting *MD Mall Assocs., LLC v. CSX Transp., Inc.*, 715 F.3d 479, 486 (3d Cir. 2013))—applies only where the litigant exhibits bad faith to such a degree that it amounts to an assault on the dignity or authority of the Court, *see In re ESML Holdings Inc*, 135 F.4th 80, 91 (3d Cir. 2025).  Here, there is nothing in the record to suggest that

Natera's has changed its position in bad faith or for any improper purpose. Thus, it would be improper to invoke judicial estoppel.

Similarly, it would be improper to invoke the doctrine of equitable estoppel, which "focuses on the relationship between the parties," *Pace-O-Matic, Inc. v. Eckert, Seamans Cherin & Mellott, LLC*, 2023 WL 7491133, at *3 (3d Cir. Nov. 13, 2023), and "prohibits a party from repudiating a previously taken position when another party has relied on that position to his detriment," *In re G-I Holdings, Inc.*, 568 B.R. 731, 764 (Bankr. D.N.J. 2017) (quoting *Capitalplus Equity, LLC v. Prismatic Dev. Corp.*, 2008 WL 2783339, at *3 (D.N.J. July 16, 2008) (further quotations and citations omitted); *see also In re: Lewisberry Partners, LLC*, 2022 WL 2398694, at *16 (Bankr. E.D. Pa. July 1, 2022); *In re Price*, 361 B.R. 68, 78 (Bankr. D.N.J. 2007). Notably, equitable estoppel involves inducement, and "[a] party seeking to invoke equitable estoppel must establish three elements: (1) a misrepresentation by another party; (2) which the party reasonably relied upon (3) to the party's detriment." *DVL, Inc. v. Congoleum Corp.*, 2018 WL 4027031, at *7 (D.N.J. Aug. 23, 2018) (quoting *Palan v. Inovio Pharm. Inc.*, 653 Fed. App'x 97, 100 (3d Cir. 2016) (cleaned up)); *see also* K.M. Lewis & Paul M. Lopez, Recent Developments in Estoppel and Preclusion Doctrines in Consumer Bankruptcy Cases; Volume I of II: Estoppel, 66 OKLA. L. REV. 459, 524 (2014); Black's Law Dictionary 630 (9th ed. 2009).

In this case, Debtors did not rely on a misrepresentation to its detriment. Debtors voluntarily rejected the APA with the understanding—consistent with Natera's actions—that any dispute regarding contract interpretation, including the consequences of such rejection, would be resolved in subsequent litigation. For reasons previously explained, Debtors' reliance on Natera's former position (and Debtors' rejection of the APA) does not in itself extinguish *all* of Natera's obligations under the APA, nor does it foreclose the possibility of subsequent litigation—be it here

in bankruptcy court or in state court—as to what obligations remain.  Therefore, Debtors did not rely necessarily on Natera's former position to its detriment.  Rather, the effect of Debtors' rejection of the APA on the parties' obligations, if any, remains an open issue.

Having determined that legal and equitable estoppel cannot be utilized, the Court looks to the doctrine of quasi estoppel.  "Quasi-estoppel differs from garden-variety equitable estoppel in that there is no requirement of a change in position in reliance upon another's prior conduct." *In re Price*, 361 B.R. at 78 (collecting cases); *see also 631 N. Broad St., LP v. Commonwealth Land Title Ins. Co.*, 2018 WL 4051798, at *8 (E.D. Pa. Aug. 23, 2018), aff'd, 778 F. App'x 164 (3d Cir. 2019); *In re G-I Holdings, Inc.*, 568 B.R. at 764.  "The doctrine, which has its basis in equity, precludes a party from asserting, to another's prejudice, a position that is inconsistent with a previously-held position." *In re Price*, 361 B.R. at 79 (citing *Erie Telecommunications, Inc. v. City of Erie*, 659 F.Supp. 580, 585 (W.D. Pa. 1987).  As this Court observed in a prior opinion, "[i]n common parlance, quasi-estoppel translates into the maxim that 'one cannot blow both hot and cold.' " *Id.* (quoting *Erie Telecommunications*, 659 F.Supp. at 585); *see also In re Guterl Special Steel Corp.*, 316 B.R. 843, 856 (Bankr. W.D. Pa. 2004).

Put another way, the quasi estoppel doctrine ensures that "one cannot eat his cake and have it too." *Id.* (quoting *Western Resources, Inc. v. Union Pacific Railroad Co.*, 2002 WL 1462004 (D. Kan. 2002)).  Here, Debtors accuse Natera of doing just that. *Debtors' Reply* 4, ECF No. 13 ("Now, however, Natera seeks to have its cake and eat it too. It wants the benefit of its bargain—Invitae's valuable customer list—without having to pay the full consideration it owes.").  The Court agrees and invokes the doctrine of quasi estoppel to prevent such a result.  Natera—who tacitly consented to Debtors' explicit reservation of its rights and claims under the APA, notwithstanding rejection; and who actively took steps during the bankruptcy to seek declaratory relief in Delaware state

court to determine the parties' rights under the contract—cannot now assert that rejection of the APA extinguishes Debtors' rights and claims and/or precludes Debtors from resolving the contract dispute in Delaware state court.

Similarly, Natera cannot now argue that Debtors are foreclosed from pursuing their rights, if any, to the Milestone Payment merely because the parties' *dispute* regarding the Milestone Payment arose post-petition. This is especially so given the undisputed fact that it was always contemplated that the amount of the Milestone Payment would be calculated at some later date. Given the additional time needed to collect and analyze data to determine the "Volume Retention Percentage"—and, thus, the Milestone Payment—the Debtors "[r]ecognized that the Milestone Payment dispute might be considered a post-petition cause of action" and drafted language in the Plan to preserve their rights to litigate it. *Debtors' Reply* at 10, ECF No. 13; *see also Complaint* ¶ 3. Natera did not object to the inclusion of language in the Plan that "preserved the Debtors' right to pursue this cause of action whether it was considered to be arising before or after the Petition Date and notwithstanding rejection of the APA." *Debtors' Reply* at 10.

In the Court's view, Natera's pleadings conflate the timing of the *cause of action* retained in Debtors' Plan with the timing of the *breach*. *Compare, e.g.*, *Notice of Filing of Third Amended Joint Plan* at 36 (Article IV.G), ECF No. 909 in Case No. 24-11362 (specifying that the Debtors retain certain causes of action notwithstanding rejection) *with Natera's Obj.* ¶ 43, ECF No. 12 (arguing that rejection forecloses a debtor's right "to bring actions for alleged *post-petition* breaches of the rejected contract") (emphasis in original). Natera repeatedly argues that Debtors' rejection of the APA relieved Natera of any post-petition performance obligations and/or of liability for any post-petition breaches of the rejected contract. While that may be so, Debtors' rejection of the APA did not resolve, or render moot, the question of when Natera's obligation to

make the Milestone Payment arose (i.e. whether it was a pre-petition or post-petition obligation) and what the effect of the rejection was on any such obligation. And due to the timing of execution of the APA, the subsequent filing of the petition, and the need for additional calculations to quantify the Milestone Payment, the parties' dispute regarding the Milestone Payment did not— and, indeed, could not have—come into existence pre-petition. Nevertheless, it is precisely the type of dispute that Debtors explicitly preserved in the Plan—which Natera did not oppose—and it would be inequitable to permit any creditor to avoid a pre-petition obligation merely because a dispute did not arise until after a petition was filed.[3]

The Court notes that, in response, Natera likewise accuses Debtors of trying to " 'have its cake and eat it too' by cherry-picking parts of the APA that it likes and requiring continued performance obligations by Natera while rejecting the APA in *toto*." *Natera's Sur-Reply* ¶ 2, ECF No. 16. The Court does not view Debtors' position in this light. Indeed, Debtors concede that the rejection of the APA constitutes a breach that affords Natera a pre-petition claim against the Debtors' estates. *See, e.g.*, *Motion to Dismiss* 16, ECF No. 8. Any damages Natera possesses as a result of that rejection can then be setoff against any pre-petition obligations owed by Natera to Debtors. *See, e.g.* 11 U.S.C. § 365(g); § 502(g); *In re Commc'n Dynamics, Inc.,* 382 B.R. 219, 232 (Bankr. D. Del. 2008). The extent of each parties' obligations—which involves consideration of

---

[3] To the extent Natera argues that the provision of the Plan permitting Debtors to bring the Delaware Action is, itself, violative of the Bankruptcy Code, *see, e.g.*, *Natera's Reply* ¶ 3, ECF No. 16, the Court declines to address this argument except to point out that, even assuming this argument is true, it would not render the Plan void. Ample case law exists establishing that—where parties have had notice and opportunity but have not objected or appealed—a confirmed Plan remains valid and enforceable even where it violates the Bankruptcy Code. *See, e.g.* *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 275, 130 S. Ct. 1367, 176 L. Ed. 2d 158 (2010); *In re Smith*, 102 F.4th 643 (3d Cir. 2024) (holding that where no jurisdictional or due process concerns are implicated, a confirmed—notwithstanding its errors— can preclude subsequent objections); *In re Szostek*, 886 F.2d 1405, 1406 (3d Cir. 1989) (stating that "after the plan is confirmed the policy favoring the finality of confirmation is stronger than the bankruptcy court's and the trustee's obligations to verify a plan's compliance with the Code").

the breach and resolution of when Debtors' right to the Milestone Payment vested—is a matter of contract interpretation that can be resolved, as contemplated, in the state court.

In this vein, the Court disagrees with Natera that this Court is the appropriate forum in which to litigate this dispute. The fact that the APA was rejected in a bankruptcy plan does not place this bankruptcy court in a better position to render a decision. As stated, the rejection of the APA constitutes a breach, and *any* tribunal addressing the issue will necessarily have to determine the effect of that breach on the parties' remaining obligations, if any. *See, e.g., Natera's Obj.* ¶ 3, ECF No. 12 ("The effect of the contract's rejection on Natera's obligations to continue to perform after the Debtors' breach must be determined before the [Delaware] Action can continue . . . ."). Throughout the bankruptcy, it was contemplated that any such disputes would be resolved in state court, and this strategy was memorialized in the Plan and Plan Supplements. The Court sees no reason to alter course at this juncture. Given that the parties each explicitly sought to litigate contract interpretation issues in Delaware state court, it can be reasonably inferred that the Delaware forum is convenient for the parties, and this factor also weighs in favor of abstention. *See Reifer,* 751 F.3d at 146 (considering the convenience of the parties). Indeed, Natera concedes that "[t]he APA is governed by Delaware law[.]" *Natera's Reply* ¶ 7, ECF No. 1. Further, the Court points out that the document at the heart of this dispute, the APA, is not filed on the docket in this case but is already part of the record in the pending Delaware Action.[4] Thus, the state court seems equally equipped and a step ahead in the contract interpretation process and the "twin interests of judicial efficiency and cost effectiveness" would **not** be served by resolution of the issues in this Court. *Complaint* ¶ 46.

---

[4] The Court also understands that the parties intentionally have not filed the APA in this case due to the sensitive information contained therein.

Ultimately, this Court finds that the pending state court action, the convenience of the Delaware forum selected by the parties, the fact that Delaware law governs, and the parties' positions throughout the bankruptcy as to how and where contract interpretation issue would be litigated weigh in favor of abstention. Accordingly, this Court *sua sponte* declines to exercise jurisdiction of the declaratory action and the related request for injunctive relief. *See, e.g. Reifer*, 751 F.3d 129 (affirming district court's decision to *sua sponte* decline Declaratory Judgment Act jurisdiction).

## V.    Conclusion

For the foregoing reasons, the Court denies the Motion to Dismiss but nevertheless will decline to exercise jurisdiction and dismiss the Complaint with prejudice. The Court will enter an appropriate Order.


Honorable Michael B. Kaplan
United States Bankruptcy Judge


Dated: July 2, 2025

Form order − ntcorder

## UNITED STATES BANKRUPTCY COURT

District of New Jersey
402 East State Street
Trenton, NJ 08608

In Re:  Invitae Corporation
Debtor

Case No.: 24−11362−MBK
Chapter 11

Natera Inc.
Plaintiff

v.

Invitae Corporation
Defendant

Adv. Proc. No. 25−01015−MBK                    Judge: Michael B. Kaplan

## NOTICE OF JUDGMENT OR ORDER
### Pursuant to Fed. R. Bankr. P. 9022

Please be advised that on July 2, 2025, the court entered the following judgment or order on the court's docket in the above−captioned case:

Document Number: 18 − 8
Letter of Opinion (related document:8 Motion to Dismiss Adversary Proceeding filed by Defendant Invitae Corporation).. Service of notice of the entry of this order pursuant to Rule 9022 was made on the appropriate parties. Signed on 7/2/2025 (wiq)

Parties may review the order by accessing it through PACER or the court's electronic case filing system (CM/ECF). Public terminals for viewing are also available at the courthouse in each vicinage.

Dated: July 2, 2025
JAN: wiq

Jeanne Naughton
Clerk